UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LONGITUDE LICENSING LTD., et al.,

    Plaintiffs,

v.

APPLE INC.,

    Defendant.

Case No. 14-cv-04275-EDL

**ORDER GRANTING APPLE'S MOTION TO COMPEL**

### **Introduction**

On September 2, 2015, Apple filed a Motion to Compel documents in response to its Request for Production No. 15, seeking: "All documents that refer or relate to any testing, reverse engineering, or other analysis of any Apple products, including any Accused Products, related to the Patents-in-Suit, including all documents generated by or on behalf of Cochrane [sic] Consulting, Inc." This Court subsequently stayed the case, but the parties agreed that this motion was ripe for resolution regardless of the stay and the Court held a hearing on November 3, 2015. During the hearing, the Court requested that Longitude submit documentation relating to its engagement of Cochran Consulting ("Cochran") *in camera* but tentatively indicated that it would likely find that at least some of the reports prepared by Cochran were protected work product. However, after reviewing documents *in camera* as well as considering the arguments made in the parties' briefs and during oral argument, although a close question, the Court hereby GRANTS

Apple's motion to compel production of the thirteen reports identified in Apple's moving papers.

**Background**

Bunsow, De Mory, Smith & Allison LLP ("BDSA") has represented Longitude in its preparation for and litigation of the patents-in-suit since at least October 10, 2013. Li Decl. ¶ 2. Cochran is an engineering firm that performs patent analysis, equipment teardowns and reverse product engineering and prepares technical reports. Corbett Decl. Ex. 20. It serves as a retained consultant for Longitude in this litigation. Li Decl. ¶ 3. On or about October 17, 2013, BDSA requested from Cochran and Cochran provided an initial set of seven previously-prepared teardown reports showing various Apple products in disassembly and the internal parts of the products. Id. ¶¶ 4-8. Though the parties disputed in their papers whether the seven initial reports should be produced, during oral argument Longitude agreed to produce the seven initial reports. Therefore, this Order does not further discuss the seven Cochran reports prepared before October 2013.

Longitude's attorney declaration states that after October 17, 2013, BDSA requested and Cochran provided six additional reports of Apple's products, including investigation of specific technical features in the Apple products to ascertain whether the products infringed the patents-in-suit. Li Decl. ¶ 5. According to Longitude's attorney declaration, when it acquired the reports from Cochran after October 17, 2013, it anticipated litigation and obtained the reports for that purpose. Id. ¶ 6-7.

According to the cover letter accompanying Longitude's post-hearing submission, from October through December 2013, Cochran was operating under a verbal agreement to provide support for Longitude but there is no declaration to support this assertion and it is unclear who the parties were to any such verbal agreement. Thereafter, Cochran and third-party Conversant Intellectual Property Management ("Conversant") entered into a series of Letters of Understanding ("LOA") dated between February and June 2014 whereby Cochran agreed to perform analysis of various Apple products and prepare reports. Longitude produced copies of seven LOAs between Cochran and Conversant dated between February and June 2014 for *in camera* review. The three LOAs dated in February and March 2014 appear to relate to the reports at issue in this motion,

2

while the LOAs dated in May and June 2014 post-date the reports in question and are thus irrelevant to the Court's analysis. The LOAs refer to their purpose as "licensing" and make no mention of litigation. There is no evidence or documentation regarding the relationship between BDSA and Conversant, and the only mention of BDSA in the LOAs relates to payment. BDSA formally engaged Cochran as an expert in this case on January 29, 2015.

On April 4, 2014, Apple received a letter from BDSA on behalf of Longitude identifying five patents that Longitude believed were infringed by Apple products. See Corbett Decl. Ex. 1. On April 29, 2014, Longitude provided Apple with claim charts detailing how it believed Apple's products utilized its technology, including excerpts and screen shots of 13 reports prepared by Cochran dating from February 2010 through March 2014. Id. Ex. 2-11. The parties' discussions during this time were covered by a "Standstill Agreement." Following the standstill period, Longitude filed suit against Apple on September 23, 2014. Dkt. No. 1.

On December 4, 2014, Apple served Request for Production No. 15 seeking: "All documents that refer or relate to any testing, reverse engineering, or other analysis of any Apple products, including any Accused Products, related to the Patents-in-Suit, including all documents generated by or on behalf of Cochrane [sic] Consulting, Inc." Longitude objected on a number of grounds, including relevance and work-product immunity, but responded that it would produce responsive documents not subject to a privilege within its possession, custody or control that it located after a reasonable search according to the obligations and deadlines imposed by the Scheduling Order, including the appropriate time for fact and expert discovery. Corbett Decl. Ex. 12. Apple did not challenge Longitude's objections until May 11, 2015, when Apple sought confirmation that Longitude would produce responsive documents after reviewing Longitude's production to date. Id. Ex. 13.

During the meet and confer process, Longitude took the position that all of the Cochran reports are protected by "the work product doctrine and the enhanced protections of consulting work product and opinions that the parties agree to in the Protective Order." Id. Ex. 14. Apple argued that the reports are not protected because they were produced in the ordinary course of Longitude's business (i.e., its patent licensing program), and alternatively that Longitude waived

3

1    the privilege by including them in its infringement analysis provided to Apple. <u>Id</u>. Ex. 15-17.

2    Thereafter, Longitude offered to produce some of the reports if Apple agreed not to use them as a

3    basis for waiver or seek further discovery, including from Cochran, based on the reports. <u>Id</u>. Ex.

4    18.  Apple declined this proposal.  Beynon Decl. Exs. B-D.

5        Longitude refused to produce any reports prepared by Cochran or to prepare a privilege log

6    for these documents until the hearing on this motion, when it agreed to produce the six Cochran

7    reports dated before October 2013.  Apple moves to compel production of the Cochran reports,

8    arguing that they are not protected by work product immunity, or such protection has been waived

9    due to Longitude's partial disclosure.

10   **<u>Legal Standard</u>**

11       "The work product doctrine is a 'qualified privilege' that protects 'certain materials

12   prepared by an attorney acting for his client in anticipation of litigation.'" <u>Hernandez v. Tannien</u>,

13   604 F.3d 1095, 1100 (9th Cir. 2010); Fed. R. Civ. P.26(b)(3). The work product doctrine applies

14   to documents that are (1) prepared in anticipation of litigation or trial; and (2) prepared by or for

15   another party or by or for that other party's representative. <u>In re Grand Jury Subpoena (Torf)</u>, 357

16   F.3d 900, 907 (9th Cir. 2004).  In cases where a document could have more than one purpose, a

17   document should be deemed prepared "in anticipation of litigation" and thus eligible for work

18   product protection under Rule 26(b)(3) if, "in light of the nature of the document and the factual

19   situation in the particular case, the document can be fairly said to have been prepared or obtained

20   because of the prospect of litigation." <u>Id</u>. at 907-908 (quoting Charles Alan Wright, Arthur R.

21   Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994)).  "The

22   'because of' standard does not consider whether litigation was a primary or secondary motive

23   behind the creation of a document."  <u>Id</u>.  Rather, "it considers the totality of the circumstances and

24   affords protection when it can fairly be said that the 'document was created because of anticipated

25   litigation, *and would not have been created in substantially similar form but for the prospect of*

26   *that litigation*[.]"  <u>Id</u>. (emphasis added).  Further, "work product protection cannot be decided

27   simply by looking at one motive that contributed to a document's preparation.  The circumstances

28   surrounding the document's preparation must also be considered."  The work product doctrine

United States District Court
Northern District of California

4

contemplates that litigation counsel may employ experts and other agents to assist them in preparing a case for litigation, and the doctrine may extend to those individuals' preparations as well. Id. ("[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").

"Where a party asserts work-product immunity over a piece of evidence, the proponent of the privilege bears the burden of establishing its applicability to the present circumstances." Skynet Elec. Co. Ltd. v. Flextronics Int'l Ltd., 2013 WL 6623874, at *2 (N.D. Cal. Dec. 16, 2013); United States v. Ruehle, 583 F.3d 600, 607-08 (9th Cir. 2009). The proponent of the privilege also bears the burden of establishing that there has been no waiver of the privilege. Skynet Elec., 2013 WL 6623874 (N.D. Cal. Dec. 16, 2013) at *2. However, "[w]aiver of work-product immunity does not . . . destroy work-product immunity for other documents of the same character." Id. at *10 (citing In re EchoStar Commc'ns Corp., 448 F.3d at 1302).

**Discussion**

In its moving papers, Apple argued that none of the Cochran reports constitute work-product because they were prepared in the ordinary course of Longitude's primary business of licensing and litigating patents. As stated during oral argument, the Court rejects the position that Longitude forfeits any work product protection because of the nature of its business because licensing activities do not automatically involve litigation. See, e.g. Diagnostics Sys. Corp. v. Symantec Corp., 2008 WL 9396387, *5-6 (C.D.Cal. Aug. 12, 2008) (rejecting argument that "virtually all activities engaged in by a company premised entirely on licensing and/or enforcing patents via litigation would be classified as 'in anticipation of litigation' and would therefore be work product, distinguishing between documents relating to litigation/legal advice and those relating to primary business objectives of acquiring and licensing patents, and ordering production of pre-acquisition business analysis of patents); see also Phillips Elecs. North Am. Corp. v. Universal Elecs. Inc., 892 F. Supp. 108, 110 (D.Del. 1995) (courts must look to the factual context of documents in question to determine whether they were prepared or obtained because of the prospect of litigation regardless of business activities).

5

1    The nature of the Cochran reports at issue – "tear down" analysis of Apple's products –
2    reflects potential uses for both business and litigation purposes. As stated above, for "dual use"
3    documents such as these, the Court must evaluate whether, under the totality of the circumstances,
4    "the document can be fairly said to have been prepared or obtained because of the prospect of
5    litigation," and "would not have been created in substantially similar form but for the prospect of
6    that litigation," regardless of the nature of Longitude's business activities.  In re Grand Jury
7    Subpoena (Torf), 357 F.3d at 907-908.  With respect to the six Cochran reports still at issue,
8    though a close question, the Court concludes that Longitude has not met its burden of establishing
9    that the reports would not have otherwise been created in similar form.

10   For the two reports dated in November and December 2013, it appears that they were
11   created pursuant to a verbal agreement between Cochran and an unknown party, but there is no
12   evidence to this effect.  Longitude's attorney declaration is vague, and states that "Cochran
13   Consulting is a retained consultant for Longitude in this litigation" (Li Decl. ¶ 3) without stating
14   the date of retention, and that "[a]fter about October 17, 2013, BDIP counsel requested that
15   Cochran Consulting provide additional reports of Apple's products" (Li Decl. ¶5), again without a
16   specific date.  Longitude has not met its burden of establishing that these two reports were
17   prepared "because of" litigation, or even at the request of an attorney.

18   For the remaining four reports dated in February and March 2014, it appears that they were
19   prepared pursuant to LOAs between Cochran and Conversant executed during the same
20   timeframe.  The only mention of BDSA in the LOAs relates to payment, and there is no evidence
21   of the relationship between BDSA and either Cochran or Conversant during this period.  The
22   relevant LOAs refer only to licensing and do not mention litigation.  Even if future litigation was
23   contemplated, considered in the context of the licensing negotiations between the parties going on
24   during this period, the LOAs reflect that the Cochran reports were prepared to aid in the licensing
25   negotiations and would likely have been prepared in identical or substantially similar form
26   regardless of the prospect of litigation.  The fact that the only evidence that BDSA formally
27   engaged Cochran for purposes of this litigation is the engagement letter dated January 29, 2015,
28   which for the first time references litigation as the purpose, rather than licensing, further supports

6

this conclusion.

**IT IS SO ORDERED.**

Dated: November 17, 2015

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge